UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 17-CV-21955-GAYLES/OTAZO-REYES

MARIE L. JEAN PIERRE,

        Plaintiff,

v.

PARK HOTELS & RESORT INC., a foreign corporation F/K/A HILTON WORLDWIDE INC.,

        Defendant.

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL, WITH INCORPORATED MEMORANDUM OF LAW**

Defendant, HLT Conrad Domestic LLC ("Hilton"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 50(b) and 59, files this Motion for Judgment as a Matter of Law or for New Trial. In support thereof, Hilton states as follows:

**INTRODUCTION**

Plaintiff is a former employee of Hilton. On May 25, 2017, Plaintiff filed a complaint in which she asserted claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act ("FCRA"). Specifically, Plaintiff alleged: (1) a failure to accommodate Plaintiff's religious beliefs; (2) religious discrimination; and (3) retaliation. In connection with her claims, Plaintiff sought back pay, compensatory damages for emotional distress, punitive damages, attorneys' fees and costs.

In response to Plaintiff's allegations, Hilton maintained that it offered reasonable accommodations to Plaintiff, including the options of: (1) Saturday evening shifts in lieu of Sunday shifts; (2) swapping shifts with her co-workers; and/or (3) working before or after church on Sundays. However, Plaintiff refused the accommodation options offered by Hilton. At trial,

she did not present any evidence of religious discrimination to the jury.  As to Plaintiff's retaliation claim, there was no evidence at trial from which the jury could find that Hilton retaliated against Plaintiff because she requested Sundays off.  The evidence established that Hilton accommodated Plaintiff for six years after she first requested an accommodation, her termination occurred two years after her May 2014 letter requesting an accommodation, and two and one-half years after Jorgge Colon, the supervisor Plaintiff alleged retaliated against her, became her supervisor.  Plaintiff thus did not establish the requisite causation at trial.

The jury trial in this case began on Monday, January 7, 2019, and was completed the following Monday, January 14, 2019.  ECF Nos. 117, 124.  On Friday, January 11, 2019, the parties gave their closing arguments, the Court instructed the jury, and the jury began to deliberate.  ECF No. 123.  That same day, the jury returned a no-liability verdict that rejected all of Plaintiff's claims, but that awarded Plaintiff damages.  The Court ordered the jury to re-deliberate.

The jury's deliberations continued on Monday, January 14, 2019.  After deliberating for the second time, the jury found liability on – and only on – Plaintiff's retaliation claim and awarded damages in the total amount of $21,536,000, which included: $36,000 in back pay damages; $500,000 in compensatory damages for emotional distress and $21,000,000 in punitive damages.

For two reasons, the Court should enter judgment in Hilton's favor as a matter of law.  *First*, the Court should enter judgment as a matter of law because the jury's first verdict was consistent and conclusively found no liability on any of Plaintiff's claims against Hilton, including Plaintiff's retaliation claim.  The jury's first verdict therefore should control.  *Second*, the Court should enter judgment as a matter of law in favor of Hilton on Plaintiff's retaliation claim because there was no evidence or testimony at trial to support the jury's finding of liability on Plaintiff's

2

retaliation claim. At a minimum, the Court should order a new trial, both for these reasons and due to errors that occurred during the course of the trial.

## ARGUMENT AND CITATION OF AUTHORITIES

### POINT I

**HILTON IS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THE JURY'S FIRST VERDICT WAS CONSISTENT AND CONCLUSIVELY FOUND THAT THERE WAS NO LIABILITY AND THE RECORD EVIDENCE DOES NOT SUPPORT THE JURY'S FINDING OF LIABILITY ON THE RETALIATION CLAIM**

**A.  Judgment Should be Entered in Hilton's Favor on the Jury's First Verdict**

A district court "must make all reasonable efforts to reconcile an inconsistent jury verdict and if there is a view of the case which makes the jury's answers consistent, the court *must adopt that view and enter judgment accordingly*." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1489 (11th Cir. 1983) (emphasis added). Indeed, the "Seventh Amendment demands" as much. *Carswell v. Bay Cty.*, 854 F.2d 454, 458 (11th Cir. 1988). Thus, as the United States Supreme Court has explained "[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962). To determine whether a conflict in the verdict can be reconciled, a district court must ask whether the jury's answers could reflect "a logical and probable decision on the relevant issues … submitted." *Burger King*, 710 F.2d at 1489 (citing *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973)).

In this case, the jury completed the fact-finding process when it rendered its first verdict on Friday, January 11, 2019. As the Court's reading of the answers to the special interrogatories for each of the three counts confirmed, ***the jury issued an unequivocal finding of no liability***. Every answer to every factual question clearly and decisively showed that the jury did not find that

3

CASE NO.: 17-CV-21955-GAYLES/OTAZO-REYES

Hilton had acted unlawfully with respect to any of Plaintiff's three claims for a failure to accommodate, religious discrimination and retaliation. ECF No. 135, Trial Tr. 121-23, Jan. 11, 2019. And, with respect to each of the three counts, the jury accordingly declined to answer those questions asking, in yes or no fashion, whether the Plaintiff should be awarded damages. *Id.* Yet, in the (fourth) section of the verdict form concerning the amounts of damages to be awarded, the jury entered dollar amounts for each of the three types of damages at issue. *Id.* As the Court recognized, the jury entered damages amounts because of a flaw in the verdict form: the verdict form never told the jurors *not* to answer the questions in the (fourth) section concerning damages if they rejected Plaintiff's claims in the three preceding sections, and so the jury dutifully filled in the damages section of the form. *Id.* at 123, 125. The jury's verdict thus was perfectly consistent – with the seeming inconsistency disappearing upon examination of the jury's answers to the flawed verdict form. Hilton accordingly objected to the re-submission of the case to the jury, arguing that a finding of no liability was conclusive and that the Court should strike the damages award and enter judgment for Hilton. ECF No. 135, Trial Tr. 122:20-124:17, Jan. 11, 2019.

The Court noted Hilton's objection, but re-submitted the case to the jury for further deliberations. However, based on the applicable law in this Circuit, if a jury finds no liability on behalf of a defendant, but nevertheless assesses damages, then re-submission of the case to the jury by the trial court is procedurally impermissible because the first finding was a decisive verdict containing an unequivocal determination of no liability on behalf of the defendant. *Cashie v. Harris Corp.*, 742 F. Supp. 1133, 1135-36 (M.D. Fla. 1990), *aff'd*, 930 F.2d 923 (11th Cir. 1991) (citing *McCollum v. Stahl*, 579 F.2d 869 (4th Cir. 1978)). Thus, where a jury finds no liability against the defendant but then awards damages to the plaintiff, the award of damages is merely surplusage. *Cashie*, 742 F. Supp. at 1136; *McCollum*, 579 F.2d at 871; *accord. Ratigan v. N.Y.*

4

*Cent. R.R. Co.*, 291 F.2d 548, 554-55 (2d Cir. 1961) (finding erroneous legal conclusion in interrogatory disregarded as surplusage where facts determined by prior interrogatories).

In a factually analogous case, *Nimnicht v. Dick Evans, Inc.*, 477 F.2d 133 (5th Cir. 1973), the jury returned a verdict of no liability but awarded damages. *Id.* at 133. The trial court accordingly entered judgment for the defendant, in accordance to the jury's finding of no liability. *Id.* at 135. The pre-division Fifth Circuit affirmed, holding that the jury's findings of no liability "left the District Court with no room to adopt any other course," because "any damages … had to live or die" based on the jury's answers to "the prerequisite questions" on liability. *Id.* That decision is binding precedent. *See Boner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

*Christopherson v. Henderson*, 153 F. Supp. 2d 1307 (M.D. Fla. 2001), is similar. In that case, the jury returned a verdict of no liability but awarded damages. *Id.* at 1308-09. The district court sent the jury back for further deliberations, which resulted in the jury subsequently returning a verdict of liability in addition to the award of damages. *Id.* at 1309. Defendant moved for entry of judgment on the first verdict. *Id.* The Middle District entered judgment for the defendant, holding that the first verdict was, in fact, consistent as the answers to the special interrogatories conclusively found that there was no liability. *Id.* at 1310. In its rationale, the Middle District Court noted that "the mere fact that the jury did answer those [damages] questions does not render the first verdict inconsistent . . . Thus, because the Court finds that the verdict was consistent, there was no need for the Court to resubmit the matter to the jury." *Id.*[1]

---

[1] The plaintiff appealed the district court's decision to the Eleventh Circuit. The Court of Appeals reversed the decision on other grounds as it found that the plaintiff's motion for directed verdict should have been granted. *Christopherson v. Henderson*, No. 3:99-cv-00490-HLA, ECF No. 99 (Aug. 14, 2002), a copy of which is attached hereto as **Exhibit A**. As the decision was reversed for reasons that do not exist in this case, the district court's decision is applicable.

The *Christopherson* court relied on the Fourth Circuit's decision in *McCollum v. Stahl* to guide its analysis. *Id.* at 1309 (citing *McCollum*, 579 F.2d 869 (4th Cir. 1978)). In doing so, it explained the history in *McCollum*:

> The jury in *McCollum* initially returned with a verdict that found no liability but, nonetheless, awarded damages to the plaintiff. The district court sent the jury back to reconsider its answers on the verdict form. The jury then returned with a verdict that found liability on the part of the defendant and awarded damages. The Fourth Circuit agreed with the defendant and held that it was error for the trial court to resubmit the matter to the jury. The Fourth Circuit further found that the first verdict was decisive because it contained an unequivocal finding that the defendant had done nothing wrong. Thus, the Fourth Circuit found that the response to the interrogatory regarding the amount of damages constituted surplusage and should be disregarded.

*Id.* at 1309 (internal quotations omitted).

Similarly, in *Cashie v. Harris Corp.*, the district court entered judgment as a matter of law in favor of the defendant after the jury found no liability but simultaneously determined that the plaintiff should be awarded damages. 742 F. Supp. 1133, 1135-36 (M.D. Fla. 1990), *aff'd*, 930 F.2d 923 (11th Cir. 1991) (citing *McCollum v. Stahl*, 579 F.2d 869 (4th Cir. 1978)). In *Cashie*, the plaintiff sued her employer under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Upon a special verdict, the jury found that the plaintiff's age was not a determinative factor in the employer's decision to lay her off. *Id.* at 1135. However, in assessing damages the jury found that the employer's action was "willful" in violation of the ADEA. *Id.* at 1136. The defendant moved for judgment on the ADEA claims arguing that the verdict was reconcilable and "not inconsistent." *Id.* at 1134-35.

The district court adopted the Fourth Circuit's reasoning and legal conclusion in *McCollum*, holding that where the jury found no liability on behalf of the defendant for wrongful discharge but nevertheless awarded damages, re-submission to the jury by the trial court was

6

procedurally impermissible under Fed. R. Civ. P. 49. *Id.* 1135 (citing *McCollum*, 579 F.2d at 871-72). Accordingly, the district court in *Cashie* held that the jury's finding of willful conduct when assessing damages was surplusage. *Id.* at 135-36. On appeal, the Eleventh Circuit affirmed the district court's decision.[2]  *Cashie v. Harris Corp.*, 930 F.2d 923 (11th Cir. 1991).

Here, by answering "Yes" to Question No. 4, "No" to Question No. 9, and "No" to Question No. 15 on the verdict form, the jury found in its first verdict that Hilton provided a reasonable accommodation to Plaintiff, did not discriminate against her, and did not retaliate against her. *See* ECF No. 125. Thus, at that time, the Court should have accepted the jury's verdict because the first verdict was a conclusive finding in favor of the Hilton on the threshold issue of liability.

Under such circumstances, the Court should have entered judgment for Hilton because liability had been definitively resolved in Hilton's favor in the first verdict. The jury's monetary award of back pay, compensatory and punitive damages was merely surplusage, resulting only from a lack of explicit instruction that the jury should not proceed to Section 4 if it rejected Plaintiff's claims for liability. To force the jury to reconsider the case ***after*** it had already decided the determinative issue of liability in favor of Hilton was impermissible under the Seventh Amendment, Fed. R. Civ. P. 49, and well-established case law. Accordingly, Hilton moves this Court to enter judgment in its favor based on the jury's finding of no liability in the first verdict.

In the alternative, the Court should find that the jury's verdict was an improper compromise, which warrants a new trial. A motion for a new trial under Fed. R. Civ. P. 59 must be granted "when the issues of liability and damages were tried together and there are indications that the jury may have rendered a compromise verdict." *Mekdeci v. Merrell Nat'l Laboratories,*

---

[2] Hilton is unaware of any relevant decisions from the Southern District of Florida.

*Div. of Richardson-Merrell, Inc.*, 711 F.2d 1510, 1513 (11th Cir. 1983).  Here, after the jury was forced to reconsider the case following their first, no-liability verdict, the jury sent a note making clear that they could "[]not come to a unanimous agreement."  ECF No. 135, Trial Tr. 125:25-126:1, Jan. 11, 2019.  The jury's complete turnaround to a finding of liability on the second verdict demonstrates that the jurors rendered a compromise verdict, warranting the Court's ordering a new trial.  *See Burger King Corp.*, 710 F.2d at 1486 ("[A] jury verdict influenced by an improper compromise cannot stand and a complete new trial is required because liability and damages are inseparable.  Hence, if there is a compromised finding on liability, a separate trial on damages alone will not suffice – both liability and damages must be relitigated in a new trial.").

**B.     The Record Evidence Does Not Support a Finding
        of Causation on Plaintiff's Retaliation Claim**

In its second verdict, the jury crossed out the answer to Question No. 15 and changed it from a "No" to a "Yes" to find that Hilton terminated Plaintiff "because she engaged in protected activity."  *See* ECF No. 125.  However, the record evidence does not support this finding and the Court should enter judgment as a matter of law in favor of Hilton.

On June 15, 2018, Hilton filed its motion for summary judgment.  Hilton argued that Plaintiff could not meet the causation element of her retaliation claim.  *See* ECF No. 48; *see also* ECF No. 61.  As set forth in Hilton's briefing on summary judgment, Plaintiff must prove that "but for" her protected activity, she would not have been terminated in order to succeed on a retaliation claim under Title VII and the FCRA.  *See* Court's Order, ECF No. 30 at 7 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013)).  This Court denied Hilton's motion for summary judgment in a Paperless Order dated October 23, 2018.  ECF No. 89.  On November 1, 2018, Hilton filed a motion for partial clarification and reconsideration of the Court's denial of summary judgment, which the Court denied on January 4, 2019.  ECF Nos. 94 and 114.  On January 9 and

10, 2019 at trial, Hilton renewed its position in a motion for directed verdict, which the Court again denied.  ECF No. 133, Trial Tr. 90:13-19, 99:5-8, Jan. 9, 2019; *see also* ECF No. 134, Trial Tr. 168:23-169:4, Jan. 10, 2019; ECF No. 136, Trial Tr. 12:12-18, Jan. 14, 2019.

On the record in this case, no "reasonable jury" could find that Hilton terminated Plaintiff for her protected activity of requesting religious accommodations, as there is *no* evidence that Hilton did so.  Plaintiff first requested Sundays off approximately six years before her termination.  ECF No. 133, Trial Tr. 43:20:24, Jan. 9, 2019.  In addition, she began reporting to Executive Sous Chef, Jorgge Colon, in 2013 and requested Sundays off then.  ECF No. 133, Trial Tr. 49:1-3, 50:17-51:8, Jan. 9, 2019.  The evidence at trial further demonstrated that Plaintiff's written requests to Hilton regarding Sundays off began as early as 2014.  ECF No. 133, Trial Tr. 12:12-13:21, Jan. 9, 2019.  Plaintiff was not terminated until at least two years *after* her first written request for Sundays off.  ECF No. 133, Trial Tr. 65:4-5, Jan. 9, 2019.

No reasonable jury could find that Hilton terminated Plaintiff because of her protected activity *years* after that protected activity began.

That is all the more true given that the jury found that Hilton offered Plaintiff at least one reasonable accommodation – which it could not have done if it was intent on terminating her for requesting an accommodation.  ECF No. 125.

On this record, the only reasonable conclusion is that Hilton terminated Plaintiff for her absenteeism, which resulted from her *rejection* of Hilton's reasonable accommodations.  And that, legally, is not sufficient to support a retaliation claim.  As the Eleventh Circuit has emphasized in affirming summary judgment in favor of the employer under similar circumstances:

> The evidence does not even suggest that Walgreens acted with a retaliatory animus in firing Patterson. ***Patterson cannot turn down Walgreens' reasonable accommodations and then claim retaliation when it fires him for his unwillingness to use those accommodations.***

*Patterson v. Walgreen Co.*, No. 16-16923, 2018 U.S. App. LEXIS 6014, at *19 (11th Cir. Mar. 9, 2018) (emphasis added). Thus, the Court should enter judgment as a matter of law in favor of Hilton on Plaintiff's retaliation claim as the record evidence did not support the jury's finding on liability. At the very least, the Court should order a new trial because the jury's verdict is against the "clear weight of the evidence." *U.S. ex rel. Weyerhauser Co. v. Bucon Constr. Co.*, 430 F.2d 420, 423 (5th Cir. 1970).

## POINT II

### IN THE ALTERNATIVE, THE COURT SHOULD GRANT HILTON'S MOTION FOR A NEW TRIAL

In the event the Court denies Hilton's Motion for Judgment as a Matter of Law, a new trial is warranted due to errors that occurred during trial. Specifically, the Court: (1) erred in instructing the jury on punitive damages in the absence of sufficient evidence to establish malice or reckless indifference; (2) erroneously allowed the jury to hear testimony regarding Plaintiff's on-the-job injuries and Hilton's efforts to accommodate such injuries; and (3) incorrectly permitted Plaintiff's counsel to discuss Hilton's financial status during opening statements and closing arguments, over Hilton's objection.

**A.  The Jury Should Not Have Been Instructed on Punitive Damages As There Was Insufficient Evidence to Establish Malice or Reckless Indifference**

On January 9, 10, and 11, 2019, Hilton moved for judgment as a matter of law on the issue of punitive damages, arguing that there was insufficient evidence to establish malice or reckless indifference as a matter of law. ECF No. 133, Trial Tr. 90:13-15, 92:2-15, Jan. 9, 2019; *see also* ECF No. 134, Trial Tr. 167:6-182:14, Jan. 10, 2019; ECF No. 135, Trial Tr. 30:19-39:15, Jan. 11, 2019. Hilton argued that there was no evidence of malice or reckless indifference to support an

instruction to the jury on the issue of punitive damages. The Court nevertheless submitted the issue of punitive damages to the jury.

After the jury's second verdict on January 14, 2019, the Court heard oral argument on the issue of punitive damages. The Court correctly noted:

> I am still having some difficulty with the evidence regarding punitives. There is, obviously, a very strong emotional aspect but I don't really recall much evidence or much argument about the need other than sticking it to the corporation.

ECF No. 136, Trial Tr. 12:13-18, Jan. 14, 2019. Nevertheless, the Court denied Hilton's motion for directed verdict. *Id.* at 16:5-12.

The Court's decision to allow the issue of punitive damages to reach the jury resulted in the jurors inappropriately awarding Plaintiff significant punitive damages despite their initial finding of no liability. ECF No. 125. Pursuant to Eleventh Circuit precedent, the Court's decision to deny Hilton's motion constituted error.

The Eleventh Circuit has held that "courts have 'traditionally been reluctant to grant punitive damages absent some showing of reckless or callous disregard for the law or rights of others.'" *Green Point Credit v. McLean (In re McClean)*, 794 F.3d 1313, 1324 (11th Cir. 2015). The Eleventh Circuit has "interpret[ed] this reluctance as recognition that punitive sanctions are appropriate only where a party acted with sufficient notice concerning the legal import of its offending actions." *Id.* (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-74 (1996)). Indeed, "[a] plaintiff seeking punitive damages against an employer for . . . discrimination faces daunting obstacles under the law established by decisions of the Supreme Court and this Court." *Ash v. Hithon*, 664 F.3d 883, 900 (11th Cir. 2011) ("punitive damages are disfavored by the law . . . .").

To support a punitive damages award, a plaintiff must show that the defendant acted with malice or reckless indifference to the plaintiff's federally protected rights. *Reynolds v. CSX*

11

*Transp., Inc.*, 115 F.3d 860, 869 (11th Cir. 1997). Malice means "an intent to harm" and recklessness means "serious disregard for the consequences of [one's] actions." *Splunge v. Shoney's, Inc.*, 97 F.3d 488, 491 (11th Cir. 1996). Here, there was no evidence of the ill will or reckless indifference to Plaintiff's federally protected rights required to support the imposition of punitive damages. Therefore, the Court should enter judgment as a matter of law in favor of Hilton.

In both verdicts, the jury found that Hilton offered Plaintiff a reasonable accommodation and did not discriminate against her based on her religion. ECF No. 125. In fact, the evidence at trial established that Plaintiff's immediate supervisor, Executive Sous Chef Jorgge Colon, attempted to work with Plaintiff to provide multiple accommodations, but she refused them all. ECF No. 134, Trial Tr. 63:18-19, 70:20-71:9, 72:3-10, Jan. 10, 2019; *see also* ECF No. 133, Trial Tr. 47:3-16, 53:15-18, 57:17-58:4, Jan. 9, 2019. Specifically, Mr. Colon testified at trial that he offered Plaintiff the accommodation option of working on Saturday evenings in lieu of Sundays, which he re-offered to Plaintiff during several meetings he attended with Plaintiff. ECF No. 134, Trial Tr. 71:10-17, Jan. 10, 2019. And though Hilton ultimately terminated Plaintiff, there is no evidence that it did so out of ill will, or out of reckless indifference to her right to request an accommodation. Indeed, the evidence forecloses that conclusion, as Hilton would not have tried to accommodate Plaintiff it it harbored malice or was recklessly indifferent to her right to request an accommodation.

In short, the evidence simply did not support a finding of reckless indifference or malice. *See BMW of N. Am. v. Gore*, 517 U.S. 559, 580 (1996) ("That conduct is sufficiently reprehensible to give rise to tort liability, and even a modest award of exemplary damages, does not establish the high degree of culpability that warrants a substantial punitive damages award."); *see also Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 476-77 (11th Cir. 1999) (affirming finding that defendant

intentionally discriminated on the basis of race, but reversing on the issue of punitive damages where "the record is devoid of evidence of the ill will required to support the imposition of punitive damages."). Accordingly, the Court should not have instructed the jury on the issue of punitive damages, which requires judgment as a matter of law.

**B.  The Court's Decision to Allow the Jury to Hear Testimony Regarding Plaintiff's On-the-Job Injury and Hilton's Efforts to Accommodate Such Injury Fatally Tainted the Trial and the Subsequent Jury Verdict Such That a New Trial is Necessary**

On August 16, 2018, Hilton filed its Motion *in Limine*, which included a motion to exclude from trial all evidence and testimony regarding Plaintiff's workplace injuries. ECF No. 62. The Court heard oral argument on Hilton's motion at the Calendar Call on December 12, 2018 and ruled:

> I am going to grant the motion in part. I mean, I will allow the plaintiff to testify that she had some injury and she worked and that she sought some accommodation and Mr. Colon didn't accommodate her injury, but I am going to prohibit the plaintiff from introducing the evidence regarding her having a … workers' compensation claim. What that was, anything along those lines, I don't find that to be probative.

ECF No. 110; *see also* ECF No. 108, Tr. 16:24-17:8, Dec. 12, 2018. The Court's denial of Hilton's motion constituted error as Plaintiff's testimony regarding a work injury, which had no relevance to the issues in this case, was highly prejudicial to Hilton and, in whole or in part, resulted in the jury finding Hilton liable and awarding excessive compensatory and punitive damages of $500,000 and $21 million, respectively.

Here, as explained by counsel for Hilton, evidence or testimony concerning Plaintiff's workers' compensation injury was irrelevant to this case:

> The evidence has no relevance to a religious discrimination case, and our concern is that the witnesses at trial will be questioned about the workers' comp case, any injuries that she had, how those were

13

> accommodated and somehow tr[y] to translate those accommodations into some type of lack of accommodations with respect to her religion. So, there is the risk of undue prejudice that those two issues are apples and oranges and that it would only confuse the jury to get into anything related to her injury, how that was accommodated because it has no effect on any type of religious accommodation, two separate issues … This is not a hostile work environment case. There hasn't been discovery into her workers' comp file, what restrictions she may or may not have. This is a religious discrimination case. Any inquiry into the injury and how that was dealt with, that's going to create a mini trial, and that's going to confuse the jury because the way that management dealt with any medical restrictions that she had is completely separate from any treatment she claims that she received based on her religion. Certainly, they can ask whether – inquire of the witnesses how management treated her based on her religion and her request for time off, but dragging anything related to her injury into it is completely irrelevant. It's going to prejudice our client and it's just – it's going to open up an area of inquiry that has no relevance or place in a religious discrimination accommodation and retaliation trial.

ECF No. 108, Tr. 13:7-19, 16:5-20, Dec. 12, 2018. The introduction of this line of questioning at trial was highly prejudicial to Hilton as the jury was unfairly biased against Hilton because of Plaintiff's injury, as well as testimony regarding Hilton's purported failure to accommodate the injury. The introduction of that evidence only served to unfairly and improperly strengthen Plaintiff's attempt to appeal to the sympathies of the jury, which unduly and unfairly prejudiced Hilton.

On this point, the Seventh Circuit's decision in *Arrigo v. Link*, 836 F.3d 787 (7th Cir. 2016), is instructive. In *Arrigo*, the plaintiff argued that she was terminated from her employment because she sought leave under the Family and Medical Leave Act. *Id.* at 787. Plaintiff's counsel argued that notes from the plaintiff's supervisor regarding his antipathy toward people with anxiety, which was the basis for the plaintiff requesting leave, "are evidence of [defendant's] anti-FMLA animus."

*Id.* at 794.  The Seventh Circuit rejected that argument and, in so doing, explained the irrelevance of the notes:

> [A]ny bias [defendant] had toward [plaintiff's] medical condition was not at issue in this trial, where the only claim was that [defendant] fired [plaintiff] for using or wanting to use medical leave.  There was no claim at trial that [defendant] discriminated against her on the basis of her anxiety.  That is, the issue was not whether [defendant] had a bias against a particular condition, but whether [defendant] had a bias toward the use of leave.  So the district court did not abuse its discretion when it excluded the notes.

*Id.* at 795-96.

Just so here.  This case did not involve a claim of workers' compensation retaliation.  The claims were limited to an alleged failure to accommodate Plaintiff's religious beliefs, religious discrimination, and retaliation.  Plaintiff's argument that Hilton's handling of her workplace injury was relevant in this case should have been rejected by the Court as irrelevant and highly prejudicial to Hilton.  The Court wrongfully admitted the evidence, which resulted in the jury being confused and awarding excessive compensatory and punitive damages to Plaintiff.

C. **The Court's Decision to Allow Plaintiff's Counsel to Discuss Hilton's Financial Status During Opening Statements and Closing Arguments Fatally Tainted the Trial and the Subsequent Jury Verdict Such that a New Trial is Required**

On August 16, 2018, Hilton filed its Motion *in Limine*, which included a motion to exclude all evidence, testimony or argument regarding Hilton's financial worth.  ECF No. 62.  The Court heard oral argument on Hilton's motion at the Calendar Call on December 12, 2018.  The Court denied Hilton's motion, in part, and permitted Plaintiff's counsel to address the jury, without any evidentiary support, on Hilton's financial worth.  The Court granted the motion, only in part, merely prohibiting Plaintiff from inquiring of the witnesses at trial regarding Hilton's financial worth.  ECF No. 110; *see also* ECF No. 108, Tr. 21:3-22:6, Dec. 12, 2018.  The Court's partial denial of Hilton's motion constituted error as the unsubstantiated information regarding Hilton's

15

finances during Plaintiff's *voir dire*, opening statement, and closing statement was highly prejudicial to Hilton and resulted in the jury awarding an excessive punitive damages award of $21 million.

The Supreme Court has noted that the wealth of a defendant "has little to do with the actual harm sustained by the [plaintiff] … and cannot justify an otherwise unconstitutional punitive damages award." *State Farm Mutual Auto. Ins. Co. v. Campbell*, 123 S. Ct. 1513, 1525 (2003) (citing *BMW of N.A., Inc. v. Gore*, 517 U.S. 559, 585 (1996)).  It has also emphasized that "[t]he presentation of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses." *Honda Motor Co. v. Oberg*, 512 U.S. 415, 431 (1994). That is precisely what happened here.

During opening statements and closing arguments, Plaintiff's counsel emphasized how many companies were under Hilton's umbrella to argue to the jury that:

> [A]t the end of the day, we're talking about Hilton Hotels, Waldorf Astoria, Embassy Suites, Hampton Inn, Doubletree, Curio, Hilton Garden, Hilton, Hilton Grand Vacation, not just here in Florida, throughout the United States and throughout the entire world … [t]his is Hilton Worldwide.  They have – she is not even a speck of dust in their world … I will get back on the $50 million, but I am telling you $50 million because, what's $1 million to Worldwide Hilton.  That's nothing.  What's $2 million, $4 million, $50 million, when you – you will be soldiers … This is Hilton Worldwide.  Fifty million dollars.  If you think that's too low, you can award a billion dollars.  You can award $200 million.  You can award $10 million.  You can do anything you want.  Your power is unlimited.

ECF No. 135, Trial Tr. 81:2-6; 86:3-4; 88:5-8; 108:12-16, Jan. 11, 2019.

As a result of the Court's partial denial of Hilton's motion *in limine*, Hilton was unduly prejudiced as its size and financial worth appealed to the jury's biases, which resulted in the jury's ultimate finding of liability and an excessive punitive damages award. *See Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 666-67 (5th Cir. 1967) (emphasizing the inappropriateness of

"appeal[ing] to the sympathy and sectional prejudices of the jury [by] refer[ing] to the bigness and wealth of" the other party). The Court should have excluded information regarding Hilton's financial worth as unduly prejudicial under Fed. R. Evid. 403. The Court's denial of the motion constituted error, which warrants a new trial.

## **CONCLUSION**

For the reasons set forth herein, Hilton respectfully requests that the Court enter judgment as a matter of law in its favor or, in the alternative, order a new trial.

Dated: February 11, 2019.

> Respectfully submitted,
>
> JACKSON LEWIS P.C.
> One Biscayne Tower, Suite 3500
> 2 South Biscayne Boulevard
> Miami, Florida 33131
> Telephone: 305-577-7600
> Facsimile: 305-373-4466
>
> s/ *Scott S. Allen*
> Scott S. Allen, Esq.
> Florida Bar No. 142378
> E-mail: *scott.allen@jacksonlewis.com*
> Anisley Tarragona, Esq.
> Florida Bar No. 51626
> E-mail: *anisley.tarragona@jacksonlewis.com*
>
> *Attorneys for Defendant*

CASE NO.: 17-CV-21955-GAYLES/OTAZO-REYES

## CERTIFICATE OF SERVICE

I certify that on February 11, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Anisley Tarragona*
Anisley Tarragona, Esq.

## SERVICE LIST

Marc L. Brumer, Esq.
BRUMER & BRUMER, P.A.
1 Southeast 3rd Avenue, Suite 2900
SunTrust International Center
Miami, Florida 33131
Telephone: (305) 374-2000
Facsimile: (305) 358-0303
*Attorneys for Plaintiff*

Scott S. Allen, Esq.
Anisley Tarragona, Esq.
JACKSON LEWIS P.C.
2 South Biscayne Boulevard, Suite 3500
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
*Attorneys for Defendant*

R. Martin Saenz, Esq.
Yadhira Ramirez-Toro, Esq.
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Suite 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
*Attorneys for Plaintiff*