UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 17-CV-21955-GAYLES/OTAZO-REYES

MARIE L. JEAN PIERRE,            )
                                 )
         Plaintiff,              )
                                 )
v.                               )
                                 )
PARK HOTELS & RESORT INC., a foreign )
corporation F/K/A HILTON WORLDWIDE INC., )
                                 )
         Defendant.              )
_____)

### DEFENDANT'S MOTION FOR REMITTITUR WITH INCORPORATED MEMORANDUM OF LAW

Defendant, HLT Conrad Domestic LLC ("Hilton"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 59, files this Motion for Remittitur. In support thereof, Hilton states as follows:

### INTRODUCTION

Plaintiff is a former employee of Hilton. On May 25, 2017, Plaintiff filed a complaint in which she asserted claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act ("FCRA"). Specifically, Plaintiff alleged: (1) a failure to accommodate Plaintiff's religious beliefs; (2) religious discrimination; and (3) retaliation. In connection with her claims, Plaintiff sought back pay, compensatory damages for emotional distress, punitive damages, attorneys' fees and costs.

In response to Plaintiff's allegations, Hilton maintained that it offered reasonable accommodations to Plaintiff, including the options of: (1) Saturday evening shifts in lieu of Sunday shifts; (2) swapping shifts with her co-workers; and/or (3) working before or after church on Sundays. However, Plaintiff refused the accommodation options offered by Hilton.

CASE NO.:  17-CV-21955-GAYLES/OTAZO-REYES

The jury trial in this case began on Monday, January 7, 2019, and was completed the following Monday, January 14, 2019. ECF Nos. 117, 124. On Friday, January 11, 2019, the parties gave their closing arguments, the Court instructed the jury, and the jury began to deliberate. ECF No. 123. That same day, the jury returned a no-liability verdict that rejected all of Plaintiff's claims, but which awarded Plaintiff damages. The Court ordered the jury to re-deliberate.

The jury's deliberations continued on Monday, January 14, 2019. After deliberating for the second time, the jury found liability on – and only on – Plaintiff's retaliation claim and awarded damages in the total amount of $21,536,000, which included $36,000 in back pay damages, $500,000 in compensatory damages for emotional distress, and $21,000,000 in punitive damages.

Concurrently with this Motion, Hilton is filing a motion for judgment as a matter of law or, in the alternative, for a new trial. *See* ECF No. 138. If the Court denies that motion, the Court should consider this Motion and remit Plaintiff's punitive damages award. That punitive damages award should be remitted in its entirety, as it is unsupported by the evidence and violates due process. But, at the very least, the punitive damages award should be remitted to $300,000 as a matter of law pursuant to the punitive damages cap under Title VII.

The Court should also remit the $500,000 compensatory damages award. That award consisted entirely of damages for emotional distress. Given that the trial evidence established that any emotional distress Plaintiff sustained was "garden variety," the jury's $500,000 compensatory damages award for emotional distress was excessive and unsupported by the evidence presented at trial.

## ARGUMENT AND CITATION OF AUTHORITIES

## THE COURT SHOULD REMIT PLAINTIFF'S COMPENSATORY AND PUNITIVE DAMAGES AWARDS AS EXCESSIVE IN VIOLATION OF DUE PROCESS AND UNSUPPORTED BY THE RECORD EVIDENCE

**A.  The Court Should Remit the Punitive Damages Award As It Exceeded the Statutory Cap of $300,000 under Title VII and $100,000 under the FCRA**

The Court should remit the $21 million punitive damages award to conform to the statutory caps imposed by Title VII and the FCRA.  As part of the Civil Rights Act of 1991, Congress enacted 42 U.S.C. § 1981a, which "created a right to recover compensatory damages and punitive damages for certain violations of Title VII of the Civil Rights Act of 1964." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 247 (1994).  Before that time, punitive and compensatory damages had not been available to Title VII claimants.  Congress, however, placed limits on the amount of damages available as Section 1981a caps an employer's exposure to compensatory and punitive damages along a sliding scale that varies with the employer's size.  It provides in relevant part:

> (3) Limitations.  The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party . . .
> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(b)(3)(D).  "Thus, while Congress approved of Title VII claimants recovering punitive damages under certain circumstances, it recognized a need to limit that sanction." *Copley v. Bax Glob., Inc.*, 97 F. Supp. 2d 1164, 1172 (S.D. Fla. 2000).

Similarly, the Florida legislature has placed caps on punitive damages awards in cases under the FCRA.  The FCRA provides in relevant part that "[t]he judgment for the total amount of punitive damages awarded under this section to an aggrieved person shall not exceed $100,000."

Fla. Stat. § 760.11(5).  Courts in this district have routinely applied the caps imposed by Title VII and the FCRA to reduce damages awards.  *See United States EEOC v. W&O, Inc.*, 213 F.3d 600, 609 (11th Cir. 2000) (affirming the district court's reduction of punitive damages awards to the statutory cap under Title VII); *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1463 (11th Cir. 1998) (affirming the trial court's reduction of a $3 million punitive damages award to $300,000 under the Title VII cap); *Hudson v. Chertoff*, 473 F. Supp. 2d 1286 (S.D. Fla. 2007) (applying Title VII's cap on punitive and compensatory damages to reduce emotional distress damages of $1.5 million to $300,000).

Accordingly, the Court should remit the $21 million punitive damages award to $300,000 because Title VII clearly and expressly limits the recovery of compensatory and punitive damages to a combined total of $300,000.  42 U.S.C. § 1981a(b)(3)(D).  In the alternative, should Plaintiff elect recovery under the FCRA, the Court should reduce the punitive damages awarded from $21 million to $100,000 in accordance with the limitations under the FCRA.  *See* Fla. Stat. § 760.11(5). Plaintiff cannot combine her punitive damages awards under Title VII and the FCRA, *i.e.*, her total punitive damages recovery is capped at $300,000 not $400,000.  *See Bradshaw v. School Bd. of Broward Cty.*, 486 F.3d 1205, 1209-10 (11th Cir. 2007).

B.     **The Court Should Remit the Punitive Damages Award as Grossly Excessive and in Violation of Due Process as the Jury Was Swayed by Passion and Prejudice**

Notwithstanding the punitive damages caps under Title VII and the FCRA, the Court should remit the punitive damages award in full as grossly excessive in violation of due process. The jury here awarded $21 million in punitive damages because it was impermissibly swayed by passion and prejudice, in part due to the Court's error in instructing the jury on punitive damages in the absence of sufficient evidence to establish malice or reckless indifference, allowing the jury to hear testimony regarding Plaintiff's on-the-job injuries and Hilton's efforts to accommodate

such injuries, and permitting Plaintiff's counsel to discuss Hilton's financial status during opening statements and closing arguments, over Hilton's objections. *See Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 684 (2d Cir. 1993) ("While a jury has broad discretion in measuring damages, it may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket."); *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1447 (11th Cir. 1985) (noting that "a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence.").

In assessing the propriety of a punitive damage award, the Court must adhere to the three "guideposts" identified by the Supreme Court:

> (1) the degree of reprehensibility of the defendant's conduct; (2) the ratio between the actual or potential harm suffered by the plaintiff compensatory damages) and the punitive damage award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1282 (11th Cir. 2008). Remittitur is appropriate in this case because: (1) there was no evidence of reprehensible conduct by Hilton; (2) there was a significant disparity between the actual or potential harm suffered by Plaintiff and the punitive damages award; and (3) the punitive damages award was excessive when compared to comparable employment cases.

### 1. **There Was No Evidence of Reprehensible Conduct**

At trial, no evidence of reprehensible conduct by Hilton was presented to the jury. In evaluating the reprehensibility of Hilton's conduct, the Court is

> obligated to assess a reprehensibility issue on the basis of five factors: (1) whether the harm done was physical as opposed to economic; (2) whether the conduct involved indifference to the health or safety of others; (3) whether the victim was financially vulnerable; (4) whether the conduct involved repeated actions or

5

> was isolated; and (5) whether the harm suffered by the plaintiff resulted from conduct that was known or suspected to be unlawful.

*BMW of N. Am. v. Gore*, 517 U.S. 559, 576-77 (1996).

Here, the trial record is devoid of any evidence that Plaintiff suffered any physical harm attributable to Hilton. In fact, Plaintiff never visited a mental health care professional, and only spoke with her pastor about her alleged distress immediately before trial, two and a half years after her termination. ECF No. 133, Trial Tr. 75:8-76:10, Jan. 9, 2019. There was also no evidence that Hilton's conduct involved indifference to the health or safety of others. In addition, there was no evidence that Plaintiff was financially vulnerable – in fact, the evidence established that Plaintiff stopped looking for employment and voluntarily chose to stay home and babysit her almost one-year old grandchild. ECF No. 133, Trial Tr. 30:12-20, 70:16-71:2, Jan. 9, 2019. Further, no evidence was presented that Hilton had ever previously engaged in retaliatory conduct against any employees.

Indeed, the evidence at trial established that Plaintiff's immediate supervisor, Executive Sous Chef Jorgge Colon, attempted to work with Plaintiff to provide multiple accommodations, but she refused them all. ECF No. 134, Trial Tr. 63:18-19, 70:20-71:9, 72:3-10, Jan. 10, 2019; *see also* ECF No. 133, Trial Tr. 47:3-16, 53:15-18, 57:17-58:4, Jan. 9, 2019. Specifically, Mr. Colon testified at trial that he offered Plaintiff the accommodation option of working on Saturday evenings in lieu of Sundays, which he re-offered to Plaintiff during each of the disciplinary meetings he attended with Plaintiff. ECF No. 134, Trial Tr. 71:10-17, Jan. 10, 2019. In fact, in its verdict, the jury found that Hilton offered Plaintiff a reasonable accommodation. ECF No. 125. The jury further found that Hilton did not discriminate against Plaintiff based on her religion. *Id.* The evidence simply does not support a finding of reckless indifference or malice. *See BMW of N. Am. v. Gore*, 517 U.S. 559, 580 (1996) ("That conduct is sufficiently reprehensible to give rise

6

to tort liability, and even a modest award of exemplary damages, does not establish the high degree of culpability that warrants a substantial punitive damages award."); *see also Richardson v. Tricom Pictures & Prods.*, 334 F. Supp. 2d 1303, 1323 (S.D. Fla. 2004) (finding that the degree of reprehensibility was not enough to support the jury's punitive damage award and noting that the defendant's conduct "does not rise to the level of malicious, egregious or outrageous conduct. There was no evidence that [defendant] harbored an evil motive, engaged in trickery or deceit, or was responsible for a pattern or practice of discrimination or retaliation against employees.").

      **2.**      **There Was a Significant Disparity Between the Actual or Potential Harm Suffered by Plaintiff and the Punitive Damages Award**

The second "guidepost" a court must consider when determining whether a particular punitive damages award is unconstitutionally excessive is the principle that punitive damages must bear a "reasonable relationship" to actual damages. *Gore*, 517 U.S. at 580. The Supreme Court rejected the notion that there is a "mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case." *Id.* at 583 (quoting *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 18 (1991)). However, the court said that a "general concern of reasonableness … properly enter[s] into the constitutional calculus." *Gore*, 517 U.S. at 583. Accordingly, a high ratio between punitive and actual damages is an indication that the defendant did not have adequate notice that is conduct might subject it to an award of such size. *Id.* at 574.

In *Gore*, the court relied in part on the reasoning of its earlier decisions in *Haslip* and *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443 (1993). In *TXO*, the Court stated that the outside limit was ten to one. *TXO*, 509 U.S. at 462.[1] And, in *Haslip*, the Court stated that a 4-1 ratio "may be close to the line" drawn by the Due Process Clause in most cases. *Haslip*, 499 U.S. at 22-23.

---

[1]    In *TXO*, the court was more lenient in the ratio in light of the potential losses to the plaintiffs: "While petitioner stresses the shocking disparity between the punitive award and the

Here, there is a 39.1 to 1 ratio between the compensatory damages award and the punitive damages award. Such a ratio is clearly excessive and in violation of due process. However, it would be more appropriate to compare the punitive damages award with the far smaller figure for compensatory damages discussed in Section C, *infra*. *See Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1365 (11th Cir. 2004) (finding $1,000,000 punitive damage award to be disproportionate when compared to the $115.05 compensatory damage award, which reflected court's reduction of compensatory award). Because the award of compensatory damages should be remitted to approximately $66,000, the punitive damages award is more than 318 times the compensatory damages and that ratio is self-evidently excessive.

### 3. The Punitive Damages Award in this Case Was Clearly Excessive and Violates Due Process When Compared to Comparable Employment Cases

The jury's punitive damages award of $21 million is grossly excessive, violates due process, and is "shocking to the judicial conscience" when compared to comparable employment cases, including the following:

- *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1282 (11th Cir. 2008) – Plaintiff received an award of $500,000 in punitive damages, which was upheld by the court in light of the egregious conduct by the employer. Specifically, the employee alleged that his supervisor, coworkers, and the owner of the employer used racial slurs; the employee reported these incidents but was told that he would have to just accept that these things occurred; and the employee was terminated after he refused to sign an agreement requiring him to arbitrate all claims against the employer, including claims related to an EEOC discrimination charge that the employee had filed eight months earlier.

- *Vance v. S. Bell Tel. & Tel. Co.*, 863 F.2d 1503 (11th Cir. 1989) – court found that $2.5 million in punitive damages in employment discrimination suit based on race was excessive; even if jury were properly able to conclude that employer acted with reckless or callous indifference in gross disregard of employee, award was high and shocking in view of totality of the evidence.

---

compensatory award, that shock dissipates when one considered the potential loss to respondents, in terms of reduced or eliminated royalties payments, had the petitioner succeeded in its illicit scheme." *TXO*, 509 U.S. at 462.

8

- *Richardson v. Tricom Pictures & Prods.*, 334 F. Supp. 2d 1303 (S.D. Fla. 2004) – reducing jury's punitive damages award of $50,000 to the amount of back pay in a retaliation case where the court found that the degree of reprehensibility of the defendant was low as the jury found in the defendant's favor on claims of unpaid wages and sexual harassment.

C.  **The Court Should Remit the Jury's Award of Compensatory Damages as Excessive and Unsupported by the Evidence**

Pursuant to Eleventh Circuit precedent, compensatory damages for emotional distress must be proven by competent, sufficient evidence, and a "genuine injury" is necessary. *See Akouri v. Fla. DOT*, 408 F.3d 1338, 1345 (11th Cir. 2005) (citing *Carey v. Piphus*, 435 U.S. 247 (1978)). The Eleventh Circuit in *Akouri* relied on a decision from the Fourth Circuit, *Price v. City of Charlotte, N.C.*, 93 F.3d 1241 (4th Cir. 1996), for a list of specific criteria to consider when assessing the appropriateness of an emotional damages award in a discrimination case. Those criteria include:

> (1) whether the plaintiff lost the esteem of his/her peers; (2) whether the plaintiff suffered physical injury as a consequence of her emotional distress; (3) whether the plaintiff received psychological counseling or other medical treatment; (4) whether the plaintiff suffered a loss of income; (5) the degree of emotional distress; (6) the context of the events surrounding the emotional distress; (7) the evidence tending to corroborate the plaintiff's testimony; (8) the nexus between the challenged conduct and the emotional distress; and (9) any mitigating circumstances.

*Akouri*, 408 F.3d at 1345, n.5.

In addition, "[c]omparing the awards entered in other cases of discrimination can be useful" in determining whether an award exceeds a reasonable range. *Id.* Indeed, in addressing a motion for remittitur of compensatory damages under the FCRA, the court in *City of Hollywood v. Hogan*, 986 So. 2d 634, 649 (Fla. 4th DCA 2008), stated:

> In evaluating the reasonableness of a jury award in a retaliation or discrimination suit, it is useful to look at the duration, extent, and consequences of the mental anguish suffered by plaintiff and to see whether the case fits into a class of so-called *garden-variety mental-anguish claims, in which the awards hover in the range of $5,000 to $30,000*. In such cases, the evidence usually is limited to the

9

> testimony of the plaintiff, who describes the emotional distress in vague or conclusory terms, presents minimal or no evidence of medical treatment, and offers little detail of the duration, severity, or consequences of the condition.

*Id.* (emphasis added).

Further, the Eleventh Circuit and district courts within it have held that a plaintiff's brief testimony of suffering "emotional distress" is insufficient to support a sizeable damages award. *See Akouri*, 408 F.3d at 1344-46 (rejecting plaintiff's argument that the jury was "entitled to infer from his demeanor while testifying at trial that he suffered emotional harm and mental anguish" because "such inferences," without actual injury were "insufficient to support the jury's award" of $552,000); *see also Bernstein v. Sephora*, 182 F. Supp. 2d 1214 (S.D. Fla. 2002) (remittitur was required where plaintiff's evidence on the issue of emotional distress consisted solely of her own testimony that she felt sick, angry, furious, and upset, and that she was anxious, had trouble sleeping, lost her appetite, and could not "find peace").

Similarly, in *Copley v. Bax Glob., Inc.*, 97 F. Supp. 2d 1164, 1171 (S.D. Fla. 2000), the trial court remitted a compensatory award of nearly $500,000 to $100,000. Judge Highsmith reasoned:

> The evidence does not reflect that Plaintiff suffered any type of extraordinary psychological injury attributable to his termination, which would support the jury's award of nearly $500,000 for emotional pain and mental anguish. The mental pain and suffering incurred by Plaintiff was consistent with that which most individuals, with typical financial and family obligations, would feel if suddenly terminated, under ominous circumstances, from a job they had held for years. Reasonable people, and thus reasonable juries, could differ as to an amount that would compensate for such mental anguish; but, $479,692.00 is beyond the realm of reasonableness. Remittitur is therefore appropriate. The evidence in this case would support an award for emotional pain and mental anguish of up to $100,000.00.

*Id.* at 1172. In addition, the Middle District of Florida in *Stone v. Geico Gen. Ins. Co.*, No. 8:05-cv-636-T-30TBM, 2009 U.S. Dist. LEXIS 109236, at *6 (M.D. Fla. Nov. 5, 2009), in an age

discrimination case, granted the defendant's motion for remittitur, in part, finding that the jury award of $200,000 in compensatory damages for pain and suffering should be reduced to $50,000. In doing so, the court held that "[t]o recover more than nominal damages for emotional distress, [the] plaintiff must prove actual injury." *Id.* Because the plaintiff in *Stone* did not receive any psychological counseling or medical treatment, the court determined her claim was a "garden-variety emotional distress claim" which necessitated the remittitur. *Id.* at \*\*5-7.

In this case, when applying the *Price* factors, and in considering the awards entered in other cases involving similar unsubstantiated testimony of plaintiffs suffering "emotional distress," the jury's compensatory damages award of $500,000 was clearly excessive, because this case involved a simple garden-variety emotional distress claim. Thus, there is no question that the award should be remitted to a nominal amount, if anything.

Much like the facts in *Hogan* and *Stone*, the facts of this case are those of a "typical" or "garden-variety" discrimination or retaliation case. At trial, Plaintiff presented no proof of physical injury or medical or psychological evidence of emotional pain and suffering. Indeed, Plaintiff only presented her own uncorroborated, self-serving testimony that she was "depressed" and "distressed." ECF No. 133, Trial Tr. 73:9-74:19, 75:15-20, Jan. 9, 2019. Plaintiff did not testify that she lost the esteem of her peers, or that she suffered any physical injury as a result of her emotional distress. Moreover, she testified that she never received any mental health counseling, including psychological counseling or medical treatment, and, in fact, admitted during cross examination that she would have sought the help of a mental health professional had she been depressed. *Id.* at 73:14-74:5. The only other testimony Plaintiff presented at trial was that of her son who testified that his mother was "depressed" but conceded that she was able to bathe herself, get out of bed in the morning, attend church on Sundays, and have family dinners on

11

Sundays. Trial Tr. 226:7-227:11; 230:23-231:8, Jan. 7, 2019, relevant excerpts of which are attached hereto as **Exhibit A**. In addition, Plaintiff admittedly did not seek emotional guidance from her pastor, or speak with him about her emotional state, until two and one-half years after her termination from Hilton in March 2016. ECF No. 133, Trial Tr. 74:15-76:1, Jan. 9, 2019.

As further evidence that Plaintiff failed to demonstrate that she suffered severe – or even minimal – emotional distress due to her separation from Hilton, Plaintiff obtained employment and was, in fact, gainfully employed for several weeks cleaning offices after her separation from Hilton and cleaning houses for her friends and family. ECF No. 133, Trial Tr. 67:17-68:7, 69:3-23, Jan. 9, 2019. Based on her trial testimony, Plaintiff stopped working because she and her daughter reached an agreement whereby Plaintiff would take care of her grandson after they determined Plaintiff would earn less money working any job than her daughter would have to pay in daycare costs for her grandson. ECF No. 133, Trial Tr. 30:12-20, 70:16-71:2, Jan. 9, 2019.

Accordingly, this Court should grant Hilton's motion to remit the non-economical compensatory damages award of $500,000 to an amount in the range recommended by courts for garden-variety emotional distress damages *i.e.*, between $5,000 and $30,000.

## **CONCLUSION**

For the reasons set forth herein, Hilton respectfully requests that if the Court denies its Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial, the Court remit the punitive and compensatory damages awarded by the jury.

CASE NO.: 17-CV-21955-GAYLES/OTAZO-REYES

Dated: February 11, 2019.

Respectfully submitted,

JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305-577-7600

s/ *Scott S. Allen*
Scott S. Allen, Esq.
Florida Bar No. 142378
E-mail: *scott.allen@jacksonlewis.com*
Anisley Tarragona, Esq.
Florida Bar No. 51626
E-mail: *anisley.tarragona@jacksonlewis.com*

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on February 11, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Anisley Tarragona*
Anisley Tarragona, Esq.

CASE NO.: 17-CV-21955-GAYLES/OTAZO-REYES

## **SERVICE LIST**

| | |
|---|---|
| Marc L. Brumer, Esq.<br>BRUMER & BRUMER, P.A.<br>1 Southeast 3rd Avenue, Suite 2900<br>SunTrust International Center<br>Miami, Florida 33131<br>Telephone: (305) 374-2000<br><br>*Attorneys for Plaintiff* | Scott S. Allen, Esq.<br>Anisley Tarragona, Esq.<br>JACKSON LEWIS P.C.<br>2 South Biscayne Boulevard, Suite 3500<br>Miami, Florida 33131<br>Telephone: (305) 577-7600<br><br>*Attorneys for Defendant* |
| R. Martin Saenz, Esq.<br>Yadhira Ramirez-Toro, Esq.<br>SAENZ & ANDERSON, PLLC<br>20900 NE 30th Avenue, Suite 800<br>Aventura, Florida 33180<br>Telephone: (305) 503-5131<br><br>*Attorneys for Plaintiff* | |